v. Childs v. Baker, etc. et al. Thank you, Your Honor. May it please the Court. My name is Bill Messinger, and I represent appellants Kathleen D'Agostino and eight other family child care providers. I'd like to reserve five minutes for rebuttal. This case presents... Yes, you may have it. Thank you, Your Honor. This case presents the question of whether the Commonwealth, under the First Amendment, can extend exclusive representation beyond employment relationships and designate an exclusive representative to speak for other individuals and their relations with government, here home family child care providers. Appellants admit that they cannot because the compelling government interest that justifies exclusive representation of employees, the government's interest in workplace labor peace, does not extend beyond the workplace employment relationships, as the Supreme Court recently held in Harris. The district court, however, held that Massachusetts could extend exclusive representation for any rational basis because supposedly individuals are not associated with their exclusive representative or with its speech on their behalf. And I submit this decision should be reversed. Well, before you go on with your argument, would you address one issue in the manner of the terms of the question that you raised? And you raised the question about the power of the state to do this, to the extent that it gives an exclusivity to representation beyond the employment relationship. And I will be candid to say I don't see how it does that. As I understand your argument in the brief, you say it does that because any approach to the government is, in effect, an exercise of the guaranteed, constitutionally guaranteed power to petition for redress. If we do not accept that view, if we say employment relationships are something different from merely addressing the government under the guaranteed clause, is that the end of your case? If I understand the question correctly, Justice Souter, is Massachusetts, in fact, extending exclusive representation by virtue of the act? No, I thought your argument was that the exclusive representation binds your clients, even outside the employment relationship and bargaining about the employment relationship. Is that your argument? Maybe I misunderstood you. The exclusive representation here is binding on my clients. The SEIU is the exclusive representative. No, the question is, does it bind your clients in any way other than bargaining in the employment relationship? Well, yes, because they're not actually employees of the Commonwealth. But they are contractors who would like to bargain with the state. Is that correct? I don't think it's fair to characterize them as government contractors. Rather, they're private businesses, in some cases relatives, who care for public aid recipients. And much in the same way I wouldn't say that a grocery store that accepts food stamps as payments is a government contractor that sells food for the government, nor would I say that family child care providers, who happen to provide care to some people who pay with public assistance monies, are, in fact, government contractors. But, I mean, the exact distinction there. So you're saying that because their relationship is, although it involves payment for services, nothing more, although that relationship is not one of the traditional union contract, that, therefore, that alone justifies your position? I wouldn't say that alone, but that is a factor, and that this is outside of the employment relationship. But I also thought that you had argued in your brief that the Massachusetts statutory scheme also constitutes SEIU as their exclusive agent to approach the government with respect to policy matters that might be tangential to but didn't directly involve their employment. Yes, Your Honor, in that the representation here goes to certain aspects of how Massachusetts income eligible child care program is operated on the exact subjects of bargaining are delineated in sections G and H of the Act. And so the SEIU in that respect is bargaining over certain aspects of how that program is run, including rates for payment, which is actually the rates that the public aid recipient is entitled to. So, in effect, the SEIU is bargaining for how much public aid recipients should receive as aid payments because that controls their payment. It's almost like bargaining with a grocery store over how much food stamp benefits public aid recipients are entitled to. Can your clients, if they disagree with the position taken by the exclusive bargaining agents, can your clients address a letter to the state agency saying, don't buy the argument or the position that the exclusive bargaining agent is putting before you? It's wrong for the following reasons. Can your clients send a letter like that? Yes, Your Honor. However, the fact that individuals are free to speak doesn't justify compelling them to support a message against their will. Why are they being compelled to support it? They are not asked to join the union. They are not asked to pay for the union anything. And they can express a dissenting view if they choose to express it. Because the union, as a matter of law, is their exclusive agent for speaking to the Commonwealth. In practical terms, that means you can't have, in effect, two unions, I suppose. But doesn't that really, doesn't your argument simply boil down to the fact that they're going to pay more attention to the union? No, it's not a question of who the state listens to, although it does restrict the ability of the state to listen to individual providers because, as an exclusive representative, the state can no longer, what's called, directly deal with individual providers on the subjects of bargaining. And the Massachusetts Supreme Court case in SEIU Local 509 versus Labor Commission goes into that restriction. But more to the point here, it's not so much that Massachusetts is simply choosing to whom it listens. It's designated who is speaking for Kathleen D. Agostino and other providers, and that is the associational injury. The way I understood this, your clients could, of course, send a letter. But if your clients wanted to meet with the EC, a member of the union would also have to be present at the meeting. And the state could not adopt the position your client took in that meeting unless it was consistent with the collective bargaining agreement. That is exactly correct, Your Honor. Okay. I would have thought that that was where the statute was most vulnerable, if it is vulnerable at all. But you don't seem to focus in on that. You seem to be pitching a broader argument to us, which I now understand as, number one, they're not really state employees, and number two, the union has the ability to deal with the state on broader terms than merely employment-related. It can get into matters of policy as well. Yes, Your Honor. Okay. What do you mean by matters of policy that are not sort of fair union bargaining material issues? Well, it regards the operation of the child care program, which involves the subjects of bargaining are encouraging education and training for child care providers, improving recruitment, which is a very broad term, and then payment procedures, and then also the rates of payment, which means how much of a voucher size do the public assistant individuals receive. Why is that a policy as opposed to the normal stuff of collective bargaining? Well, because it concerns the operation of a program, and then voluntary petitioning on this matter would concern lobbying. So say, for example, if an association that represented corporate daycare centers decided to talk to EEC officials and members of the general court to influence them to raise the rates or make certain changes to the program, that would certainly be considered lobbying. What the SEIU does on behalf of providers is exactly the same. The only difference is that it's a compulsory association and not a voluntary one. And so I think that's what makes it matters of public policy. Also instructive on this is Harris, and Harris said that the SEIU local in that state, its bargaining with the state over certain aspects of its Medicaid program was, in fact, speech on a matter of public concern, and that it wasn't limited just to an internal proprietary matter. This sounds like the argument's about to be made in the Supreme Court on Tuesday, is it? Monday, I believe, Your Honor. Monday. Yes. This will come up. But I believe just going back to the structure of the argument, the threshold question here is, does SEIU's exclusive representation compel these individuals, providers, to associate with the union and its message? Once the answer is yes, then all these other issues go to, is that compelled association justified under exacting scrutiny? How are they compelled when you agree that if they don't agree with the union's position, they can drop a letter to the agency saying, we think the union's all wet? Well, because they can disagree with it doesn't change the fact the SEIU's still speaking on their behalf. So, for example, in Woolley v. Maynard, Mr. Maynard could have put bumper stickers all over his car saying, I don't want to live free or die, but that's still unjustified. But he was forced to carry a message, and your clients are not being forced to carry a message. I would submit that they are in the fact that the union is legally their agent for speaking to the state, just as I am legally Ms. DiAugustino's agent for speaking to this court. What I say imputes back to Ms. DiAugustino in the same way that what the SEIU says is on behalf of all providers, as a matter of law, not just its members. Thank you, Your Honors. Thank you. Good morning, Your Honors, and may it please the Court. Tim Casey on behalf of the State Defendants. Your Honors, the Massachusetts law at issue in this case does not require the plaintiffs to join a union or pay anything to support it in any way. It does not limit their ability to speak out on matters related to their employment or on other policy-related matters. It does not prohibit them from performing whatever association they like in order to speak to or petition the government. In fact, as the district court put it, the act does not compel the plaintiffs to do or not do anything. All that the act does is permit home child care providers who receive subsidies from the state to select, if they wish, through a majority vote process, a union to act as their exclusive representative to negotiate a labor contract with the state. And if they so choose such a union, it requires the state to negotiate in good faith with the designated union over the terms and conditions of the provider's employment. What about the not only terms and conditions of employment but educational policy matters? Well, Your Honor, even if the act extended that far under Knight, that would be constitutionally acceptable. It would not be First Amendment harm because the plaintiffs would remain free to form their own groups. Yeah, but Knight involved people who were actually public employees, not people who were deemed public employees for a limited purpose. And if Harris teaches anything, it teaches that the law places restrictions on deemed public employees that are greater than those placed on actual public employees. It does, Your Honor, for the purpose of the compelled speech that mandatory payments of fees to unions entails. I think Harris was quite clear that it was about the compelled speech. Well, I'm not suggesting that Harris is in some way directly on point. What I am suggesting is that the rationale of Harris has what may be viewed as a fairly compelling analogy to this case. I mean, certainly the whole concept of the state's ability, simply because it provides benefits to deem someone who is plainly not a public employee, to deem that person a public employee, is a little unsettling. And one wonders, under your view of the matter, what the limiting principle is. I mean, how far can a state go? Well, Your Honor. Could it require collective bargaining for physicians who receive Medicaid payments from patients? Well, Your Honor, in order for there to be an exclusive representative, there would have to be some kind of contract to be negotiated. Yeah. Well, Medicaid rates are variable. The states accept them every year. There's no reason they couldn't be negotiated with a provider's union, so to speak, if there were one. But I would think that most people would question deeming doctors public employees just because a portion of their income came from Medicaid. Your Honor, respectfully, I don't see anything necessarily constitutionally problematic about a state saying to a group of regulated persons, you may, if you wish, select through a majority vote process a representative to negotiate with the government, to speak to the government, and to negotiate over either the contract terms or even per night over policy matters not strictly related to contract terms. Then what is added, if anything is added, by deeming them, in this case, to be public employees? Your Honor, it is one mechanism in Massachusetts through Chapter 150E of the general laws  So, in effect, you're saying if they had not deemed them, they could have reenacted, what is it, 150B for the benefit of these providers and have a separate statute for them? It could, Your Honor. And that would have accomplished the same thing that they accomplished by deeming them employees? It could. Is the answer yes? Yes. And in our view, the reason is because, as we state in our brief, there is no First Amendment harm here. Plaintiffs characterize it as the state selecting a preferred advocate to advocate on behalf of providers, but that is not what happened here. What happened here is the state permitted providers to select, if they wish, a provider through a majority vote process, I'm sorry, a representative through a majority vote process, to negotiate with the state over the terms and conditions of their employment. So, if Abood is overruled, you would say that would have no impact on your case? We would, Your Honor, because, again, we think Abood is about fees. We think Harris v. Quinn is solely about fees. And if Abood is overruled, then it doesn't change the fact that exclusive representation without more, without any required fees, which is the case here, would not represent First Amendment injury. What about this danger of sort of corruption in the system, which is the state has created the reason for this union to exist? It's given the list of all providers to one or two unions, and then a decision is made. What about complicity in the bargaining so that the rates turn out to be sort of lower than might have otherwise been expected from a truly independent union? Well, Your Honor, the political process protects against that in Massachusetts, both in terms of the way the collective bargaining agreement here is structured and as a matter of Massachusetts law. Matters that are subject to appropriation have to be decided by the legislature. So, regardless of what a CBA says, it's the legislature that has the final call on the rates? That's right. And the Supreme Court said, for example, in the city of Madison case, that a state can't prohibit bargaining unit members from speaking out to the legislature or in a public forum in disagreement with or to express opposition to a union. So if non-union members of the bargaining unit or people who oppose the union think the rates that have been negotiated are too high, they're free to speak to the union to say, the union got it all wrong. Legislature, you should reject these rates and set the rates at some lower rate. So, again, the First Amendment rights of the providers here are not implicated and thus the law should be subject only to rational basis review. Okay, what is the rational basis? The rational basis is, as stated in the Act, Your Honor, to improve child care for low-income and at-risk families by enhancing collaboration and cooperation between the state. But it has nothing to do with rate setting, does it? Well, it does, Your Honor, in the sense that if rates are inadequate to attract sufficient quality home child care providers. Was there a finding by someone before this legislation was enacted that there is a serious problem of care for children because the rates are too low and that's why we're doing this? Well, Your Honor, that I would argue is a permissible judgment for the legislature to make under rational basis. It certainly is, but was such a judgment made? There's nothing in the record to reflect that explicitly, but I think that was the sense of the legislature and the reason why it passed the Act in the first place. May I ask you a further question? Yes, hang on. I would have thought that part of the rational basis was to bring some coherence to the relationship between all these scattered providers all over the state and the state agency. And I would have thought that that was not only a possible benefit to the providers, but a benefit to the state in being able to sit down, in effect, to listen to, if it chooses, listen to one voice rather than listening to 300 voices which, in effect, it never could do anyway. I would have thought that coherence in administration was part of the rational basis. It is, Your Honor, and though not stated in the Act itself, that certainly is, again, a permissible reason for the legislature to do what it did. The labor peace interest in negotiating with a single representative as opposed to each individual provider or rival unions, the state viewed that as a more efficient way to order its relations with home child care providers, and that's what it did. But, of course, if that's a valid rationale, then it applies in every instance of possible payment out on a contractual relationship with someone who otherwise is not a state employee. Well, Your Honor, I acknowledge that that's... That may not be sufficient. If... Here, it's a special relationship because we have children in need who are involved. But what... Like Judge Selya, I'm looking for a limiting principle. Your Honor, if the state imposes upon or infringes the constitutional rights of a regulated party, then there would presumably be heightened scrutiny that requires the state not only to come forth with a heightened or compelling rationale, but also a demonstration of the fit between ends and means. But here, because there is no imposition upon First Amendment rights, the Act is subject only to rational basis review. You know, you could view this in categorical terms as there are no associational or actually non-associational rights protected by the First Amendment involved here. Or you could say, my God, in that Michigan case in the 1980s, there was a powerful series of dissents about the non... The exercise of your ability not to associate with others. I know the way the court came out, but to have the wing of the court speak the way it did suggests to me that we don't want to say there's no even arguable right not to associate involved here. Is the state actually going to push us that far, therefore we don't even ask what the state's justification is? Your Honor, I don't mean to suggest that we need have no justification. It still need be rational. But I do mean to say that no court has ever recognized that exclusive representation standing alone represents First Amendment harm that need be justified by the state under some form of heightened scrutiny. The cases that have applied heightened scrutiny, Abboud arguably, Knox, Harris v. Quinn, were about the compelled speech that comes with compulsory fees. Otherwise, with some very limited exceptions, the field of labor relations has generally been thought to be left to the prerogative and the discretion of legislatures. I agree, but that's where Judge Selye's point comes in, that you're extending this by creating fake public employees out of people who are not really public employees. Well, Your Honor, I would say that as far as Massachusetts goes, 150E deals with public employment. So in order to utilize Chapter 150E, there need be some form of an employment relationship. And the Court, respectfully, need not necessarily resolve the question of how far the state can go with other regulated parties. But I think it is worth making the point that where the regulated persons remain free to form associations as they wish, to oppose their representative, it may not be First Amendment harm. Okay. Thank you. Thank you, Your Honors. May I please the Court? I'm Scott Crumland, appearing for the Union. Massachusetts is one of the states that allows family child care providers to democratically select a representative for the purpose of collective bargaining. How many are there? There are ten. There's a footnote in the Union's brief that cites the other statute. There are another approximately ten states that extend collective bargaining to home care workers like the ones in Harris v. Quinn. People would not reasonably believe that when the Union takes positions in collective bargaining that those positions are personally supported by every member of the bargaining unit because that's not how any democratic system works. And therefore, the dissenting members of the bargaining unit are not being associated with those positions in the sense that's relevant for purposes of First Amendment expressive association. The specific claim that the plaintiffs are making here is inconsistent with the Supreme Court's analysis in Knight. Their claim here is that even if workers don't have to join the Union, don't have to pay any money to the Union, have complete affirmative First Amendment rights like all other citizens to disagree with the Union, even if people wouldn't assume that they agreed with the Union, that there's a per se expressive association that's being made. Knight said that the faculty members were free not to associate with the exclusive representative which necessarily rejects the claim that there's a First Amendment expressive association. But there is kind of a mirror image association because the Union's voice is amplified because it is expressly permitted by this statute to say that we are speaking for all 300 or whatever the number is, child care providers, whereas the fact of the matter is that some number of those providers may disagree with the Union. And there may be a labor peace rationale that justifies that in the employment context, but in this context of artificial employment, deemed employment, I find it profoundly disquieting. Well, the rationale of Knight was not that the faculty members' First Amendment rights were being infringed, but that the government had a sufficient justification because they were the government's employees and the government had leeway to infringe those rights. Yeah, but these people aren't government employees, people we're dealing with here. And the fact that the government calls them employees doesn't make them employees. They're not subject to withholding. They don't pay FICA on the money the government gives them. They may within their own corporations if they're incorporated or within their own proprietary businesses. And I just wonder how far afield we've gone from Knight when we couple Knight with this assumed power of the government to create employment relationships that simply do not exist, that are just in effect constructed out of thin air. Well, first, your honor, I don't agree that it's just constructed out of thin air in the sense that the child care providers are a group of about 3,000 people who are being paid by the government. That's true. None of whom are employees of the Commonwealth in any realistic sense. The term employment is a fuzzy term. They're employees for purposes of paid sick leave, for instance. But I understand your honor's point, and I would suggest that the plaintiff's claim here depends also on a reading of Abood that was rejected in Knight. In Knight, some of the dissenters said that in Abood we held that exclusive representation is a burden on First Amendment rights, but that it was justified in Abood itself. And the majority in footnote 13 of Knight rejected that interpretation and said that in Abood the burden was the requirement people have to pay fees. I'd also add that the dissenters in Knight did not dissent because they adopted the position being urged by the plaintiffs here. The dissenters in Knight suggested that there would be undue pressure on the workers to actually join the union and thereby associate. They did not adopt this per se association argument that the court's being asked here to adopt. I would note also that the National Labor Relations Act would have its constitutionality called into doubt if there was such a per se association between the speech of the exclusive representative and the members of the bargaining unit. The private sector workers covered by the National Labor Relations Act are not the government's employees either, and the National Labor Relations Board is certifying after an election that the entire bargaining unit is represented by an exclusive representative. At least under the analysis of the labor law until now, it's been assumed that Congress can do that if there's a rational basis for regulating commerce, not a compelling interest to which the National Labor Relations Act in all its aspects is narrowly tailored. Finally, the court's decisions do put limits on the use of exclusive representation systems. One of the limits is on the permissible meaning of exclusivity. The Supreme Court was very clear in the City of Madison Joint School District that exclusivity cannot keep people from speaking and petitioning in the same manner as all other citizens. The union cannot be the exclusive representative for purposes of dealing with the legislature, for purposes of any type of public forum. People can speak for themselves. The court's also been very clear in saying that systems that do impose burdens on First Amendment rights, those where you have to pay fees or join the organization, those trigger strict scrutiny. It's not disputed here that under this system, the dissenting providers don't have to do anything to indicate support for the union. I'm sorry, you said the triggers for strict scrutiny were payment of fees or... At least triggers for scrutiny, not necessarily strict scrutiny. Triggers for heightened scrutiny, requirement to pay fees, requirements to actually join the organization. If there was some obligation to wear union buttons, carry union signs, do something else that indicated support for the message of the organization. Or if there were some restriction on affirmative First Amendment rights to participate in public discourse like all other citizens. Here, the Commonwealth is just deciding that in a particular process, not a forum, but a process of contract negotiation, it wants to meet with a majority representative. That doesn't take away any of the First Amendment rights of people who don't support the majority representative. It opens a new process. What about the provision that the minority, the non-majority, may come up with a terrific idea, but unless it is consistent with the collective bargaining agreement, the state is precluded, the way I read the statute, from adopting that idea? Well, I believe you, Ron, are referring to the section of the statute that just says that individual employees can present their own grievances, but that the union has a right to be present. I would suggest that grievances... No, there's another provision, an inconsistency provision, I believe. That the resolution of the grievance can't be inconsistent with the collective bargaining agreement. I would construe grievance in that context narrowly to mean what labor law means by grievances, which is a claim that the collective bargaining agreement is not being followed. There's no doubt that bargaining unit members can engage in any speech they want toward the government, and that the government can listen to them, that they're not under any restriction. Actually, I could see an as-applied challenge coming up under that provision, but this case is a facial challenge to the statute. That's correct, Your Honor. Thank you, Your Honor. I believe we've come back to sort of the threshold question in this case, which is, does exclusive representation compel association in speech in a way that triggers First Amendment scrutiny? And the appellees have identified several ways in which the Act does not violate First Amendment rights. It does not restrict speech, things to that effect. But they don't have an answer to the way that it does, and that is that it compels providers to accept the SEAU as their exclusive agent for dealing with the government, which necessarily associates all providers with the SEAU and its speech. And I believe this is inherent in the statute, the labor statute, Section 5, Chapter 150, Section 5, which says an exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit. And here that means family child care providers. The ability of the SEAU to act and contract for all providers necessarily affiliates all providers with the SEAU, its acts and contracts. But doesn't the provision you have just quoted mean simply that when a collective bargaining agreement has been reached, the terms, for example, compensation, will apply to everyone, whether a member of the union or not a member of the union, who comes within the program. It does not mean, as I understand it, that the government, the agency, cannot listen to a non-union employee, a non-union provider, if it wishes to do so. The truth is it probably won't. But it can listen and, in fact, it can reject the union's position in the collective bargaining if it wishes to. The answer is actually somewhere in between. The state's not to turn a complete deaf ear, but on the other hand the state cannot what's called directly deal with individual providers over the subject of bargaining, and a great case on this. Well, in other words, that means that if the agreement with the union is, you know, they'll be paid $5 an hour. The state can't go out and pay a non-union member $6 an hour. That is true, but it goes prior to that. So in SCIU Local 509 versus the Labor Relations Commission, in that case the Commonwealth merely surveyed employees represented by the SCIU before a contract was agreed to. There was contract negotiations ongoing. The Massachusetts Supreme Court said that was illegal because by doing that survey, the state had undermined the SCIU's status as the, quote, exclusive voice of the employees in that case, and not only undermined the SCIU's legal status as the exclusive voice, but also the impression in the eyes of employees that the SCIU was the only person who could speak for them. And the fact that that interest could be undermined strongly shows that exclusive representation does create the impression and the legal reality that the SCIU is, in fact, the exclusive and collective voice for all individual providers. Does your case hinge on that interpretation by the SJC of state law? I wouldn't say that it hinges, but it supports the case because, again, this is a case of compelled association, and I wanted to address Knight very quickly. One of the ways Knight is distinguishable, in addition to the fact that it only dealt with employees, is that the question in Knight was a narrow one. It's right in the first paragraph of the opinion. Does restricting the ability of non-union employees to participate in union bargaining sessions infringe upon their rights to be heard by government? That is not the claim here. The claim here is, can individuals be compelled to associate with an exclusive representative? That wasn't an issue in Knight because the court passed upon that in Abood when considering the legality of compulsory fees for exclusive representation. And Abood held that that mandatory association, exclusive representation, was justified by the labor peace interest. Knight didn't revisit that. But that doesn't help the providers here, or it doesn't help the SEIU here, because Harris rejected the proposition that the labor peace interest applies outside of the employment relationship. So unlike your brother, if Abood is overruled, you think it has implications for this case? I believe what the court says on the way to overruling Abood, if it does, could have implications. The ultimate conclusion isn't necessarily dispositive here. I believe the analysis here is, does exclusive representation compel association? If yes, then it has to satisfy exacting scrutiny, but it can't do so under Harris. So really it's the threshold question that controls. And just in my last few seconds, I just want to address one quick point. The Commonwealth's attorney mentioned that no case had ever held that exclusive representation does compel association. I beg to disagree. The 11th Circuit in Mulhall held that. In a standing case. Right. Yes. It was a standing case. May I finish? Yes. Yes, Mulhall was a standing case, but the court's analysis was quite persuasive. The court said that, yes, notwithstanding that Mr. Mulhall doesn't have to pay compulsory fees, exclusive representation does infringe on his First Amendment rights because it forces him into a mandatory agency relationship with an organization with which he disagrees. We've read the case. Yes. Thank you, Your Honor. Thank you. It was very well argued on all sides.